323-0027, In re Cornelius W. The people of the state of Illinois, Appali versus Cornelius W, appellant. Are both sides ready to proceed? Yes. Yes. All right, Ms. Spahn, you may proceed. Thank you. May it please the court. My name is Laurel Spahn. I'm one of the attorneys with the Legal Advocacy Service with the Illinois Guardianship and Advocacy Commission. And I'm here today on behalf of CW. I think you may have the case as Cornelius W. I know sometimes we use initials and we use the first name and last initial. This case was originally handled by my colleague Matt Davison who recently left our agency. This is a civil mental health appeal and it's brought pursuant to the Mental Health and Developmental Disabilities Code. This case has four substantive issues, two of which are basic compliance issues that would really be easy to reverse on. But we would ask this court to consider the other issues too because of their importance. The issues are number one, failure to provide dosage evidence of any of the proposed medications. Number two, failure to provide the required written medication information in order to be able to assess the respondent's capacity. Number three, the trial courts seeming sua sponte asking the state if it would like the court to take judicial notice of all the evidence from a prior proceeding from a few weeks earlier where a different defense counsel represented the respondent. And number four, ineffective assistance of counsel. So turning to the two compliance issues, the two compliance issues are basic failure to comply with mental health code requirements before depriving a person of a liberty interest. To prove that the benefits outweigh the risks of medication, that's one of the requirements of the involuntary treatment statute, there has to be evidence presented about the dosages of the medications. And here, there was no evidence at all about the dosages of the medications. And while it looks like there were five medications, there were actually eight altogether because there were both oral and long-acting injectable medications requested. And those are treated differently, they have different dosages, and they have different concerns attached to the oral versus the long-acting. And the AW case, that's from the fourth district, you know, that's been followed by other districts, and it does say that proving those dosages is a necessary component of showing that the benefits of the medication outweigh the harms. And that case also cites to the Len P case from 1999 from the second district. So to allow the trial court to enter an order without any evidence of dosages, which is what happened here, would be sort of a pro-forma type hearing. And this court has said in its recent 2022 Marcus S cases from Peoria County and LaSalle County that, you know, this court stands against that pro-forma type of mental health hearing when someone is being deprived of a liberty interest. Ms. Spahn, if I may, would I be correct, this is not a rhetorical question, would I be correct that, let's assume that there was testimony as to what the anticipated dosages and their benefits might be, would the treating psychiatrist subsequently be bound by testimony, or would the psychiatrist be able to exercise her best judgment and alter the dosage and treatment? Well, usually there's a dosage range that's requested, and then there's evidence as to why that range is appropriate. But would the treatment provider be able to go outside that necessary or appropriate, or would they have to go back to court? No, and I mean that's why in a petition for involuntary treatment, they're very well, or frequently there is that dosage range to provide that leeway for the provider. It also gives notice to the respondent what that dosage range is, and that way the counsel can also be cross-examined about the dosages and be able to look at the medication, see if that dosage range is within recommended levels. And oftentimes orders are within a dosage range, which gives the provider a certain leeway. And yeah, if there is a need to come back, then of course there would be the ability to come back and modify an order if that dosage range wasn't, if there needed to be some kind of a dosage beyond that range. But I've been doing this for many, many years. I don't see doctors come back because they haven't requested the appropriate dosage range. Maybe a doctor might come back because of a new medication that's being requested, but not because of a dosage range. I hope that answers your question. No, it does. And the petition did set forth a dosage, correct? There were dosages listed in the petition, but there was no evidence as to why those dosages were asked for, why they were necessary, why they were needed for this particular individual. There's no evidence about that at all. And the AW case says we can't, we can't have that. We have to have some evidence about the dosages of the medication that goes towards the benefits and the risks of why this, to comply with the statute, why this is needed for this particular respondent. The second compliance issue here is the written medication information. And the written medication information is one that can't be waived. And this court has noted if even part of the written information is omitted, the statute has not been complied with. And, you know, that was also part of the recent Marcus S cases from 2022. Here, the, we don't even have the written information to be able to look at what was given, but the testimony was that the respondent was given information only about the risks and benefits of the medication. The required information must be information about the risks, benefits, and alternatives to medication. It's very important that a respondent has all of that information to be able to make a decision. There was no information about that and that the testimony was very similar to what's been found to be non-compliant from another case that said, you know, where a doctor testifies that only risks and benefit information was given. There's no information about the alternatives to medication being given. So, you know, those two issues are two compliance issues that would be easy to reverse on. The judicial notice issue is a novel issue that has not been raised before. And what happened here was the court said, this is from the transcript, the court said, and state, you wanted me to take judicial notice of, and the state fills in the rest. The testimony from the previous hearing for involuntary admission. And the judge says, okay, I'm going to take judicial notice of that hearing and of all the testimony in that hearing and the order for involuntary admission. Now, that is problematic because it's not a matter for judicial notice. Judicial notice is taking judicial notice of facts that are not subject to reasonable dispute and that they are generally known within the territorial jurisdiction of the trial court or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. And that's from Illinois Supreme Court case law and cited in our brief. Ms. Spahn? Yes. The doctor who testified at the first hearing versus the doctor that testified at the second hearing, different people or the same one? Different, different doctors. The only people taking judicial notice of the original doctor's testimony and the second doc, that original doctor was not called in the second hearing and subject to cross-examination? That doctor was not called at the second hearing. That's right. Thank you. So, what was really happening, I think, was that the doctor, I'm sorry, the judge was taking judicial notice of her memory of that earlier hearing. There was no notice to respondent, respondent's counsel, that this was going to happen. There was no transcript that was provided. Bless you. The different defense counsel did not know what happened in that prior proceeding. So, this was terribly, terribly prejudicial and inappropriate for this to have happened. And it was also, you know, just a very dreadful thing that the defense counsel did not object to that. Now, there are some arguments about forfeiture in the state's said. And again, referring to the Marcus S. cases, forfeiture is a limitation on the parties, not the court. And the, you know, we raise ineffective assistance of counsel when a defense counsel hasn't made an argument at the trial level. We have to raise that ineffective assistance in case of an argument that an argument, in case of an argument on appeal that trial counsel has given up an argument by not raising it at the trial level. And I would, I would suggest that this court can reverse for those compliance errors. That's, as I said, that's an easy way to reverse here. But there's also the issue that has never been addressed before with that taking judicial notice of an entire hearing, basically plopping down a transcript from an earlier hearing into a subsequent hearing. And, and I'd like to point out too that the state is wrong when it says that there was like a reference to deterioration. If, if this court does look at that earlier transcript from that commitment proceeding, the state did not prove that the respondent met that commitment criteria for deterioration. The state asked about the harm element, harm to self or others. The state asked about the basic down that road to ask about the 119, 1-119.3 criteria for commitment. It's the more nebulous one, like a person may deteriorate and may become either harmful to self or others, or may become self-neglectful, not able to provide for their basic needs because they are not accepting treatment. But the doctor said in that commitment proceeding, the doctor said, oh yeah, CW, he's accepting treatment voluntarily. He's taking medication. So then the state pretty much abandoned that line of questioning. And the only mention of deterioration is in the judge's findings in that commitment proceeding. So, you know, don't, don't buy that. The state also argues similarly that, that the judge said in her findings that there was, I'm sorry, I can't tell what that light is right now. Is that, is that my ending light or is that my warning light? Ending. Oh, okay. All right. Well, I can stop here then unless you'd like me to finish my sentence. Any additional questions, Justice Davenport or Justice Settle? I do have a few. Returning to the issue of judicial notice, Ms. Spahn, you kind of made two arguments there. One, that judicial notice should be something plain and known to all. And you also made an argument that this is specific to this particular case because we had a different attorney involved. These cases can, the involuntary admission can either proceed this hearing, as long as they, they're not right, as long as they're not done together, it's okay to do one hearing before the other or after. Correct? That's right. So in a situation where everyone's sitting in the courtroom, same lawyer, same proceeding, same day, would you have any objection to taking judicial notice of the other hearing? Well, I think the parties could stipulate to that. I don't know if it's something for judicial notice, but I think that the parties could stipulate to maybe if the same witness is going to testify in both cases, the parties could stipulate and say, you know, family member, just testify, they're going to say the same thing in hearing number two as in hearing number one. We don't have to have that person stay and testify a second time. Thank you. But, but that would be a stipulation between the parties rather than the court taking judicial notice is what I would say. Okay. That's all I had. Justice Davenport, anything else? No, thank you. All right, Ms. Spahn, you'll have an opportunity in rebuttal. Ms. Raymond, you may proceed. Thank you. May it please the court, your honors, counsel, my name is Stephanie Raymond. I represent the people of the state of Illinois in this matter. Regarding the compliance issues, I would just like to mention a few things. We, this, it's the people's position that this, that there was compliance with both issues that were brought up. The doctor testified regarding the dosages, let me rephrase that. The doctor testified, the way that it reads is as if they were reading from the petition with the dosage listed. That's what I meant to say. So the dosages were listed on the petition. Counsel, Ms. Raymond, did you ever offer the petition into evidence? I don't believe they did in this case. Okay, thank you. Go ahead. So the dosages were listed. They went over each medicine, medication in court. They discussed the risks and benefits of each. The doctor testified that she discussed the risks and benefits of each with defendant, or excuse me, respondent. However, he was not amenable to such discussion. He was given the material. He was also, the trial court references in it when it's making its decision that respondent was given the alternatives to treatment as well. So it's the people's position that there was compliance in those issues. Ms. Raymond, I know the judge said that, but is there any evidence in the record to support that? Other than this, so the state did say, or I mean the state, excuse me, the doctor did say that she attempted to discuss this information with respondent. So that is what we would point to in that instance. Any evidence that written notification was tendered to the defendant? Written notification about alternatives to proposed treatment. That component of the statute requirements, was there any evidence that written notice of proposed alternative treatments was ever given? Other than what I've already mentioned, I don't believe so. I think that we're just arguing that it was stated so. It was the doctor testified she did attempt to talk to that person and that he was given that information. So regarding the judicial notice issue, trial courts are allowed to take judicial notice as a matter of, on, may take judicial notice of matters of record in its own proceedings. In this instance, as we already know, there was, it was the same trial court, while there were different attorneys. Can I ask a question? Is a matter of record typically understood to include prior hearsay testimony at an earlier hearing? I mean, when I think of matters of record, I'm going through the clerk's file looking at orders that were filed, things that happened. I'm not talking about hearsay testimony that has not been stipulated to, at least in my limited experience. I mean, are you aware of any case law that says a matter of record is prior hearsay testimony? I am not, and especially not in this instance, because the mental health code does not contemplate judicial notice period, which includes, it does not say that it's not allowed. In this particular case, the hearing had occurred short in time to what was, to the next hearing. And just as of note, when I referenced deterioration of ability, the judge referenced that in his decision. He did state that. He stated, because I believe you have a serious mental illness, which is a diagnosis of schizoaffective disorder, in that you currently exhibit a deterioration in ability to function based on testimony from both hearings and that your illness has existed for a marked period of time. What I'm arguing in my brief regarding judicial notice in this instance is that the judge in making its decision was speaking to his deterioration in his ability to function, which was explored at the previous hearing. I do, although the words do say, take judicial notice of all testimony. It's the state's position that when read in context, his decision, he's really speaking to the respondent's ability to function, which had deteriorated based on the doctor's testimony regarding his, the way he acted while he was in, while he was restrained in the room, such as talking to himself and the cars. And, you know, when he came in initially, there was some violence and that's how he got there in the non-compliance. Initially he did, as respondent pointed out, there was some compliance with medication initially. However, that went by the wayside and he no longer was able to, or he was not voluntarily taking the medication. And the court found that his deterioration was in his ability to function based on the doctor's testimony in both cases. So it's the state's that judicial notice was not improperly taken in this case and that it is a tool for the courts to use and it should remain so. Regarding, I really, I think that's all I would just stand on my brief for any remaining issues, unless there are any questions, I'd be more than willing to answer those. Justice Hedl or Justice Davenport. I don't have any other questions. May I have one moment, please? Justice Brennan. Just so that we're clear on the judicial notice argument, you believe that the fact that the court took judicial notice of the first doctor who talked about the non-compliance, et cetera, that that is acceptable judicial notice? That's the state's position at this time. Okay. Thank you. No further questions, Justice Brennan. All right. Thank you, Ms. Raymond. Ms. Spahn, you are muted and it is your opportunity for rebuttal. You are muted, Ms. Spahn. I'm so sorry. You would think after all this zooming, I would remember to unmute. I guess I do not have anything further to add. I don't think I have anything to rebut at this point. I think I covered everything in my main argument. I would answer any other questions that the court has. I do want to point out, I think this court has mean that there was evidence. You have to look for where there is evidence of a thing. I almost had the feeling as I was reading the court's finding that the court was maybe reading along with the form order or reading a bench book maybe or something like that. I'm not saying that to be mean. I'm just saying that there were findings made where there was no evidence. There must be some explanation for that, but there was no evidence that written information about alternatives was given, yet the judge found that. I would just point out that in that the state did not pursue the line of questioning about that third criteria for involuntary admission because the respondent was consenting to treatment. However, the court found that third element of commitment. That's the first time you see the words deterioration in that transcript. There has to be evidence. There has to be evidence presented. We can't be on sort of an autopilot mode in doing these very, very important involuntary admission and involuntary treatment hearings even when we have a person who we think may benefit from some type of treatment. If you look at the commitment transcript also, this was a person who was taking medication. This was a person who had a home to return to. The disposition part of that hearing, the person was doing well at the time. The doctor said, I'm not really looking at any less restrictive alternative because he's doing well. He has a home, but I'm just not ready to send him there yet. We're going ahead with this hearing. It was a bit uncomfortable. Then maybe he was held a bit too long. We ended up with this involuntary medication proceeding that was done in sort of a pro forma manner with a defense counsel who, to her credit, she preserved this respondent's right to appeal. That's why we're here today. She may not have had the training that she needed to be able to represent this respondent at the time. Since that time, she has asked our office a whole lot of questions. I see my time is just about up. Sorry. I would ask this court to please look carefully at the issues and please reverse the trial court's order here and provide some guidance so that this doesn't happen again. Thank you. Any additional questions? Thank you, Ms. Spahn from Justice for Spirited Argument. We will take the matter under advisement and render a decision in due course.